IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **WRIGHT EXPRESS FINANCIAL SERVICES CORPORATION,**<br><br>Plaintiff,<br><br>vs.<br><br>**ACAS ACQUISITION (LOGEX), INC., ET AL.,**<br><br>**Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:06CV1039DAK |

This matter is before the court on Plaintiff Wright Express Financial Services Corporation's Motion for Summary Judgment. The court held a hearing on the motion on October 11, 2007. At the hearing, Plaintiff was represented by Mark Callister, and Defendants were represented by Matthew Lalli and Amber Mettler. The court took the motion under advisement. The court has carefully considered all pleadings, memoranda, and other materials submitted by the parties. The court has further considered the arguments made by counsel at the hearing and the law and facts relevant to the motions. Now being fully advised, the court enters the following Memorandum Decision and Order.

## BACKGROUND

On December 5, 2005, Plaintiff Wright Express Financial Services entered into a Business Charge Account Agreement ("Fleet Charge Agreement") with Defendant ACAS

Acquisition, Inc. ("ACAS"). Under this Agreement, Plaintiff established a line of commercial credit for ACAS in the amount of $3 million. Also, on December 29, 2005, ACAS entered into a Corporate Card Program Master Agreement with Plaintiff. Under this MasterCard Agreement, Plaintiff established a line of commercial credit for ACAS in the amount of $350,000. This amount was increased to $600,000 in March 2006, and then increased again to $1,600,000 in April 2006.

This court granted Plaintiff's summary judgment and entered judgment against ACAS in the amount of $3,442,802.33 for failing to pay its obligations owing under the agreements. Plaintiff claims, however, that ACAS is just a shell holding company. Therefore, Plaintiff brings this motion for summary judgment for the same amount against the other two defendants, Logex Corporation and Logistics Express, Inc. ("LEI"), both of which are wholly-owned subsidiaries of ACAS. Defendant LEI is a company in the business of transporting gas and other related products. LEI is a subsidiary of Defendant Logex, which, in turn, is a subsidiary of ACAS.

ACAS was the only signatory to the written agreements with Plaintiff. However, ACAS sent the combined financial and asset information of ACAS, Logex, and LEI when it was applying for the credit. In December 2006, Plaintiff requested that Logex and LEI sign the agreements as well. LEI and Logex refused to execute the agreements.

Pursuant to the Fleet Charge Agreement and the MasterCard Agreement between Plaintiff and ACAS, Plaintiff issued charge cards to employees, representatives, or agents of Logex and LEI who were authorized by ACAS to use the charge cards in connection with business operations. The charges on these cards were made under the credit lines established by Plaintiff

as a result of the agreements with ACAS.  ACAS admits that the $3,442,802.33 owing to Plaintiff for charges made by employees of Logex and LEI were incurred pursuant to the credit line provided to ACAS.  Defendants Logex and LEI were aware that their employees were charging business-related expenses on the cards issued by Plaintiff.

Included in each shipment of Fleet charge cards to employees of Logex and LEI was a copy of the Wright Express Business Charge Account Agreement.  The Cardholder Agreement states, "Your use of your account indicates your acceptance of this Wright Express Business Charge Account Agreement."  The Fleet charge cards contained the statement: "Use of this card constitutes acceptance of the terms and conditions of the cardholder agreement under which this card was issued, as amended from time to time."  The Fleet Cardholder Agreement between Plaintiff and ACAS provides that the "business card holder" agrees to pay "the face amount of all such credit obligations created by use of a Card."

Included in each shipment of MasterCards was a copy of the MasterCard Cardholder Agreement, which states, "Any use of your Card or Account confirms your acceptance of the terms and conditions of this Cardholder Agreement."  On the back of each Mastercard issued to these employees was a statement that reads, "Your card is issued and serviced by Wright Express Financial Services Corporation pursuant to license by MasterCard International.  Its use is subject to the terms and conditions of your Card Member Agreement."  The MasterCard Cardholder Agreements provides that each entity receiving a card under the MasterCard Agreement is responsible to pay the full amount owed on the Account.

The parties appear to dispute that the MasterCard Agreement included a provision whereby the parties agreed to centralized billings.  The parties also dispute whether centralized

billings is relevant to the issues presented in this motion.

Defendants Logex and LEI admit that they have failed and refused to pay the amounts owed to Plaintiff under the Fleet Charge Agreement and the MasterCard Agreement. Logex and LEI assert that they are not responsible for ACAS's agreements. ACAS has suffered severe financial problems and has been unable to pay its debts.

## DISCUSSION

### Plaintiff's Motion for Summary Judgment

Although Plaintiff has already obtained judgment against ACAS for the amount due and owing under its agreements, Plaintiff argues that ACAS is merely a holding company with no real ability to pay the debt. Therefore, Plaintiff seeks judgment against Defendants Logex and LEI for the same amount it received judgment against ACAS.

Plaintiff claims that under Utah Code Annotated Section 25-5-4(2)(3), Logex and LEI are liable to Plaintiff under the cardholder agreements that Defendants received when Plaintiff shipped the credit cards to employees of Logex and LEI and used them for the business purposes of Logex and LEI. Section 25-5-4(2)(3), which is part of the Utah Statute of Frauds, provides as follows:

> (e) A credit agreement is binding and enforceable without any signature by the party to be charged if:
> (i) the debtor is provided with a written copy of the terms of the agreement:
> (ii) the agreement provides that any use of the credit offered shall constitute acceptance of those terms; and
> (iii) after the debtor receives the agreement, the debtor, or a person authorized by the debtor, requests funds pursuant to the credit agreement or otherwise uses the credit offered.

*Id*.

In this case, Plaintiff sent copies of the Fleet Charge Agreement and MasterCard Cardholder Agreement to certain officers of Logex and LEI along with cards that were used by those officers. Defendants, however, contend that it is inappropriate to apply an exception to the Statute of Frauds in this situation because there is a signed agreement between Plaintiff and ACAS for the credit that was used.

Unsigned form credit agreements, identical in all respects to the agreements signed between Plaintiff and ACAS, forwarded to known related parties covered by signed agreements, cannot create separate obligations on the part of the subsidiaries. If such actions could create new contractual obligations between the parties, it would violate the integration clauses in the Credit Agreements. Both agreements state that they contain the entire agreement between the parties and that no modification is valid unless set forth in a written agreement signed by both parties.

The general rule in Utah is that a credit agreement is void unless it is in writing and signed by the party to be charged with the agreement. Utah Code Ann. § 25-5-4(1)(f) (Supp. 2007). The court is unwilling to expand the exception to the Statute of Fraud's signature requirement, which applies when there is no written credit agreement, to a situation where the card user was a user contemplated by and/or covered by existing signed agreements. Although the court does not condone a party's actions to avoid payment of their credit obligations, the court does not believe that Plaintiff's recourse lies in the Statute of Frauds. Rather, Plaintiff appears to have adequate recourse under its unjust enrichment claim and under contract law.

There are potential ambiguities in the agreements with respect to Logex's and LEI's potential liability under the agreements. Defendants argue that under the terms of the agreements

5

they are not liable for the credit agreements entered into between Plaintiff and ACAS, and this court should not expand liability to known third parties who were not made signatories to the agreements.  The signed agreements identify only ACAS as the company responsible to pay Plaintiff.  But ACAS's credit application to Plaintiff consisted of Consolidated Financial Statements that included the accounts of ACAS, Logex, and LEI.  In other words, ACAS used the assets of Logex and LEI to obtain credit from Plaintiff.  For purposes of this motion, the court need not resolve factual issues relating to Logex and LEI's liability on the written credit agreement executed by ACAS.

However, the summary judgment motion now before the court also seeks summary judgment on Plaintiff's unjust enrichment claim. Under Utah law, to establish a claim of unjust enrichment, a plaintiff must prove: (1) a benefit conferred on one person by another; (2) the conferee appreciates or has knowledge of the benefit; and (3) the conferee retains the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value.  *Bluffdale City v.* Smith, 156 P.2d 175, n.2 (Utah Ct. App. 2007).

In this case, the CFO of Logex and ACAS submitted a credit application that represented ACAS as a consolidated company comprised of the assets of Logex and LEI.  Both defendants admit that charge cards issued by Plaintiff were used by Logex or LEI employees for business expenses.  Having used their assets to obtain credit from Plaintiff that was in fact used in the operation of their business, allowing Logex and LEI to retain this benefit without payment to Plaintiff would be inequitable.

Based on the record presently before the court, the court is prepared to rule in Plaintiff's favor on the unjust enrichment claim.  Nevertheless, the court recognizes that Plaintiff did not

move for summary judgment on its unjust enrichment claim until its reply memorandum, and neither party directly addressed the issue at oral argument.  In addition, Defendants changed counsel between the briefing of the motion and oral argument.  Because Defendants have not addressed the unjust enrichment claim, the court will allow Defendants twenty days to submit a surreply on the unjust enrichment claim.  Plaintiffs may then submit a final reply on the issue within ten days.  The court will then issue its ruling on the unjust enrichment claim without a further hearing.

## CONCLUSION

Based on the above reasoning, Plaintiff's Motion for Summary Judgment with respect to the Statute of Frauds is DENIED.  The motion on Plaintiff's unjust enrichment claim shall be briefed according to the schedule set forth above.

DATED this 14th day of November, 2007.

BY THE COURT

_____
DALE A. KIMBALL
United States District Judge